NATIONAL PARK BANK OF NEW YORK v. BILLINGS et al.

(Supreme Court, Appellate Division, First Department.   May 19, 1911.)

1. PLEADING (§ 350*)—MOTION FOR JUDGMENT—ISSUES.

The court on motion for judgment under Code Civ. Proc. § 547, authorizing the court to give judgment on the pleadings on the motion of either party entitled thereto, cannot dispose of any material issue of fact, but every motion involves the decision of an issue of law, and the basis for judgment is an entry on the clerk's minutes.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1074; Dec. Dig. § 350.*]

2. PLEADING (§ 218*)—DEMURRER—HEARING.

Code Civ. Proc. § 976, as amended by Laws 1909, c. 493, providing that an issue of law may be brought on and tried at any term of the court as a contested motion, avoids the old process of noticing an issue raised by demurrer to a pleading for trial at Special Term, awaiting its turn on the calendar and entering a decision and then an interlocutory judgment, and authorizes the hearing of a demurrer as a contested motion, and one paper containing both a statement of the decision on the motion and the pronouncement of judgment takes the place of the decision and interlocutory judgment under the former practice.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 552, 553; Dec. Dig. § 218.*]

3. PLEADING (§ 225*)—DEMURRER—DECISION—FURTHER PLEADING.

Whether an issue of law arising on the pleadings by demurrer is brought on under Code Civ. Proc. § 547, authorizing the court to give judgment on the pleadings on the motion of either party entitled thereto, or under section 976, as amended by Laws 1909, c. 493, providing that an issue of law may be brought on and tried as a contested motion, the order must grant leave to amend or plead over on proper terms.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 575; Dec. Dig. § 225.*]

4. PLEADING (§ 345*)—JUDGMENT ON PLEADINGS—ISSUES OF LAW RAISED BY DEMURRER.

A motion for judgment on the pleadings involving questions of law raised by demurrer, going to the whole cause of action, is properly brought under Code Civ. Proc. § 547, authorizing the court to give judgment on the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055–1059; Dec. Dig. § 345.*]

5. WILLS (§ 628*)—CONSTRUCTION—RIGHTS ACQUIRED.

A testamentary gift found only in the direction to trustees to pay or to divide and pay in the future is the same as a gift at a future time.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1460; Dec. Dig. § 628.*]

6. WILLS (§ 630*)—ESTATES ACQUIRED—CONTINGENT FUTURE INTERESTS.

A testamentary gift of a contingent future interest is more than a bare possibility, unaccompanied by any interest or the mere chance of sharing as next of kin in the estate of another on his death, but is a right depending on a contingent event, but not subject to the will of a third person.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1464; Dec. Dig. § 630.*]

7. WILLS (§ 634*)—CONSTRUCTION—ESTATES ACQUIRED.

A will directing the trustees to invest money and pay the income thereof to testator's wife for life, and on her death to divide the estate into two shares, one share for a son or his heirs, and one share for a daugh-

ter or her heirs, and declaring that the trustees shall hold the son's share until he attains the age of 25 years with gift over in the event of his death before the death of testator's wife, or before attaining the age of 25 years, gives to the son a contingent future interest in personalty subject to a judgment creditor's action under Code Civ. Proc. § 1871.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

Scott and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the National Park Bank of New York against Henry B. Billings and others. From an order granting a motion for judgment on the pleadings, defendant named appeals. Modified and affirmed.

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

J. Culbert Palmer, for appellant.
Louis F. Doyle, for respondent.

MILLER, J. The appellant challenges the order appealed from upon the merits, and also because, as he contends, this motion should not have been entertained. It was made under section 547, Code of Civil Procedure, which provides that:

"If either party is entitled to judgment upon the pleadings the court may, upon motion at any time after issue joined, give judgment accordingly."

The point of the objection to the procedure is that an issue of law raised by demurrer to the complaint must be brought on for argument on a notice of trial, and a decision and interlocutory judgment entered thereon, and that in such a case the summary remedy provided by section 547 is inapplicable. That section has been held in this department to have been intended to permit either party to make, in advance of the trial, a motion for judgment on the pleadings which, under the practice which formerly prevailed, could be made only at the trial. Clark v. Levy, 130 App. Div. 389, 114 N. Y. Supp. 890. It has not been held, however, and I can see no logical reason for holding, that such a motion cannot be granted if a material issue of law is raised by the pleadings.

[1] Of course, if the pleadings present any issue as to a material question of fact, that issue cannot be disposed of upon such a motion, but every such motion necessarily involves the decision of an issue of law. Nor is it entirely accurate to say that the disposition of every issue of law necessarily requires a formal decision before judgment can be entered, for on a motion for judgment on the pleadings at Trial Term, which involves the determination of an issue of law, the only basis for judgment is an entry on the clerk's minutes.

[2] Prior to the recent amendment of section 976, Code Civ. Proc. (Laws 1909, c. 493), under which the hearing of a demurrer may now be brought on in this department as a contested motion, there were apparently two methods by which a demurrer could be brought on for a hearing when it went to the whole cause of action or the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

whole defense. One was by a motion for judgment under section 547, and the other was by the old process of noticing the issue for trial at Special Term, awaiting its turn on the calendar, and, after it had been determined, entering first what is called a "decision," and then what is called an "interlocutory judgment." Naturally most practitioners chose the simpler, quicker, and less expensive method of disposing of the issue. Now, the amendment of section 976 has opened the way to finally and completely avoid the useless formalities which formerly obtained in disposing of a demurrer. Of course, there must be a decision, which is nothing more than saying that the justice must decide the question presented to him, and that decision must be put in definite form, and the consequent judgment of the court pronounced. But there is no reason why the record of the decision and the pronouncement of the judgment should be contained in two papers rather than one, and it can make no possible difference to any one whether the paper which records the decision and pronounces judgment is labeled an "order" or a "decision" or an "interlocutory judgment." The same result will be obtained, the same quality of justice administered, and the same effect produced upon the litigation, if the decision of the question of law and the pronouncement of the appropriate judgment are embraced in the same paper, and it is labeled an "order," as would be obtained, administered, and produced. if two papers are drawn where one will serve the purpose, by whatever names those papers may be called. The recent enactment of section 547 and the more recent amendment of section 976 seems to me to have been inspired by a desire on the part of the Legislature to do something towards making our practice simpler and more expeditious, and I do not conceive that it is the duty of this court to thwart that intention by insisting upon the observance of antiquated and useless formalities which serve only to prolong litigation and increase the cost to litigants. Section 976, as it now stands, permits an issue of law raised by a demurrer to be brought on and tried "as a contested motion." The appropriate paper to express the decision of a motion is an order, and, in our opinion, the Code could be exactly complied with by holding that, when an issue of law is so tried, there need be but one paper entered which shall contain both a statement of the decision and the pronouncement of judgment, and which shall thus take the place of both the decision and the interlocutory judgment under the former practice. Such a paper may appropriately be styled an "order," for, after all, the interlocutory judgment is nothing more than an order for final judgment. In fact, the Code nowhere requires the entry of an interlocutory judgment upon the decision of a demurrer, and the use of that name for a paper which puts the decision into effect would seem to be infelicitous. An interlocutory judgment has been defined to be one which leaves something further to be judicially determined by the court. What is called an interlocutory judgment upon the decision of a demurrer leaves nothing to be so determined.

[3] Whether an issue of law arising upon the pleadings is brought on under section 547 or section 976, the order should contain the appropriate provisions to work substantial justice which have heretofore

been contained in an interlocutory decree on demurrer, such as extending leave to amend or plead over upon proper terms.

[4] We are therefore of the opinion that the motion in the present case was properly brought on under section 547, since the question of law raised by the demurrer went to the whole cause of action.

On the merits, however, we are of opinion that the demurrer was properly overruled. The will of Chester Billings, deceased, does contain a gift to appellant not in express words, but in a direction to trustees to divide and pay; wherefore futurity is annexed to the substance of the gift, the same as though there were express words of gift with futurity annexed to the substance thereof by express words.

[5] In Smith v. Edwards, 88 N. Y. 92, 104, Judge Finch cited in support of the rule the early English cases and Jarman on Wills (see Fifth American Edition, p. 837), from which it plainly appears that a gift, found only in a direction to trustees to pay or to divide and pay in the future, is the same as a gift at a future time. The distinction is between an absolute gift, payment only being postponed, and a gift to the substance of which futurity is annexed; in other words, between a gift of a vested future interest and a gift of a contingent future interest.

[6] The latter is more than a bare possibility, unaccompanied by any interest, or the mere chance of sharing as next of kin in the estate of another upon his death, referred to in Smith v. Kearney, 2 Barb. Ch. 533, 546. In Jones v. Roe, 3 T. R. 87, Lord Kenyon referred to the kind of possibility which was not the subject of disposition thus, "that which the heir has from the curtesy of his ancestor, and which is nothing more than the mere hope of succession"; and in Miller v. Emans, 19 N. Y. 384, 391, Judge Selden quoted from Sheppard's Touchstone a description of the three classes of possibilities which could not be released at common law, and certainly the case in hand is not one of them. The appellant then acquired upon the death of his father, not a bare possibility merely, but the right to the possession and enjoyment of one-half of his father's estate in the event that he should attain the age of 25 years and survive his mother, and that right was not subject to the will of a third party. The question is whether such a right or interest in property is within the meaning of section 1871 of the Code of Civil Procedure.

While there appears to be no controlling authority in this state on the point, it has been assumed by this court in this and the Second Department that a future contingent interest in personal property is alienable, the same as a contingent remainder in real property. See Stringer v. Barker, 110 App. Div. 37, 96 N. Y. Supp. 1052; Cohalan v. Parker, 138 App. Div. 849, 123 N. Y. Supp. 343. The question was not even indirectly involved in any of the cases cited by my Brother SCOTT in support of the said rule of construction. The sentence quoted from the opinion of Judge Earl in Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184, is strictly accurate without reference to the question before us, but a distinction must be noted between the estate in the hands of trustees and a future interest limited thereon.

[7] If the said interest was a contingent remainder in real property, there can be no doubt that it would be alienable (Real Property Law [Consol. Laws 1909, c. 50], §§ 36–50, inclusive, and section 59; Moore v. Littel, 41 N. Y. 66; Beardsley v. Hotchkiss, 96 N. Y. 201; Crooke v. County of Kings, 97 N. Y. 421; Dodge v. Stevens, 105 N. Y. 585, 12 N. E. 759; N. Y. Life Ins. & Trust Co. v. Cary, 191 N. Y. 33, 83 N. E. 598), and therefore plainly subject to the claims of creditors, for it must be that a man's creditors may reach whatever he himself can sell.

Section 11 of the personal property law (Consol. Laws 1909, c. 41), which was taken from 1 Rev. St. pt. 2, c. 4, tit. 4, §§ 1–2, contains this provision:

"In other respects limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property."

Doubtless that section applies only to the creation or limitation of such interests (see Kane v. Gott, 24 Wend. 641, 35 Am. Dec. 641; Graff v. Bonnett, 31 N. Y. 8, 17, 88 Am. Dec. 236; Cutting v. Cutting, 86 N. Y. 522, 545), but there is manifest propriety in assimilating as far as possible the rules applicable to both species of property, and the courts have gradually assimilated most of the rules governing the incidents of future estates in real property to those applicable to future interests in personal property (Graff v. Bonnett, supra; Williams v. Thorn, 70 N. Y. 270; Cutting v. Cutting, supra; Lent v. Howard, 89 N. Y. 169; Mills v. Husson, 140 N. Y. 99, 35 N. E. 422; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971; Bergmann v. Lord, 194 N. Y. 70, 86 N. E. 828). In the last case cited the court held, by analogy to section 59 of the real property law, that a vested future interest in personal property could be reached in a judgment creditor's action. To be sure, that case involved a vested interest; but why stop the analogy there? Is there not as close analogy between a future contingent interest in personal property and a contingent remainder in real property as there is between a vested future interest in personal property and a vested remainder in real property? It may be said that a remainder in real property is an estate, that the title is carved up into different estates—e. g., a life estate and an estate in remainder—whereas, in the case of a future interest in personal property, limited upon a trust estate, the whole estate is in the trustee. But that is so whether the future interest is vested or contingent. A contingent remainder in real property involves the same elements of chance as a future contingent interest in personal property, and no practical reason can be suggested against the assignment of one which does not apply to the other. By the rules of the ancient common law there could be no future interest in personal property, but with the increasing importance of that species of property the right to the use, as distinguished from the thing itself, was first recognized. Then that distinction was disregarded, and in Blackstone's time limitations of remainder interests in personal goods and chattels were recognized. Sharwood's Blackstone, book 2, p. 398. Nowadays the distinction between future interests in personal property and future estates in real property appears to have

been altogether lost·sight of, and both are commonly referred to and considered in like manner.

At common law contingent interests were not alienable or assignable to strangers for the same reason that choses in action were not assignable—i. e., to prevent maintenance—but they could be released to a party having an interest as that tended to diminish the sources of litigation. See Miller v. Emans, 19 N. Y. 384, 390. Practically, however, such interests are assignable, for to get around the strict rule of law the doctrine of equitable estoppel was invoked. The peculiar condition of society which gave rise to the common law doctrine of maintenance no longer exists. Wherefore that doctrine does not prevail in this state except as expressly preserved by statute. Thallhimer v. Brinckerhoff, 3 Cow. 623, 643, 15 Am. Dec. 308; Sedgwick v. Stanton, 14 N. Y. 289, 293. Courts of law now recognized the assignability of choses in action, not because the common law has been changed by statute, but because it is progressive. The reason for the old rule having disappeared, the law courts followed the rule in equity to keep pace with the changed conditions of society and the needs of commerce. Welch v. Mandeville, 14 U. S. 233, 4 L. Ed. 79; Mandeville v. Welch, 18 U. S. 277, 5 L. Ed. 87; Gibson v. Cooke, 20 Pick. (Mass.) 15, 32 Am. Dec. 194; Tuttle v. Bebee, 8 Johns. 152.

Of course, a rule of real property might well survive the reason for it; wherefore the propriety of the statute. Said section 59 of the real property law, originally 1 Rev. St. pt. 2, c. 1, tit. 2, § 35. But, independently of the statute, the rule even in respect to real property would doubtless by this time have been the same both in law and equity. See Washburn on Real Property (6th Ed.) § 1557, and cases cited in note. For what reason or upon what principle can it be said, then, that a future contingent interest in personal property is not assignable at law as well as in equity? Not because such right or interest does not exist, because we have seen that it is a present right, which cannot be defeated by the act of a third party, and which will ripen into an estate in enjoyment upon the·happening of a contingency. If there is now any rule against the assignability of such an interest, it must exist as a remnant of an ancient rule adopted to prevent the oppression of the weak by the strong, when it was supposed that both did not have an equal chance in the courts of justice.

As early as 1719, it was decided that a future contingent interest in personal property was transmissible (Pinbury v. Elkin, 1 P. Wms. 562); and during the eighteenth century that became a settled rule of law (King v. Withers, 3 P. Wms. 414; Chauncey v. Graydon, 2 Atk. 616; Devisme v. Mello, 1 Bro. C. C. 538; Barnes v. Allen, 1 Bro. C. C. 182). In Higden v. Williamson, 3 P. Wms. 132, decided in 1731, the following facts were involved: A., seised in fee of a copyhold estate, surrendered the premises to the use of his will, and afterwards devised them to his daughter for life, then to trustees to be sold, and the money arising from the sale to be divided among such of the daughter's children as should be living at the time of her death. A son of the daughter during her lifetime became bankrupt. The commissioners assigned his estate. On a bill brought by the assignees for the

bankrupt's share of the money arising from the sale on the death of his mother, it was held that the contingent interest of the bankrupt passed by the assignment, both for the reason that he might have departed with it and because of the language of the statute relating to bankrupts. The early cases were referred to by Kay, J., in Re Cresswell (1883) 24 Ch. Div. 107, as settling the law of the transmissibility of contingent interests in personal estate. He stated that the only exception which he was able to discover was the case where "the being in existence when the contingency happens is an essential part of the description of the person who is to take" and that "it is well settled that the transmissibility of contingent interests is a doctrine applying equally to real and personal estates, and, in the case of real estate, to contingent remainders as well as executory devises"—citing Fearne on Contingent Remainders. In this case there is no uncertainty of the person, the appellant is named as the donee. He will take only upon the contingency of his surviving his mother, but his being then in existence is no part of the description of him as donee. His survivorship being one of the contingencies, his contingent interest is, of course, not transmissible to his personal representatives; whereas, if the contingency were some other event, it would be transmissible. Kenyon v. See, 94 N. Y. 563. But that fact does not militate against its assignability, as shown by Woodruff, J., in Moore v. Littel, supra, 41 N. Y., at page 86. Surely an interest which is transmissible to personal representatives is a property interest, and should be held to be assignable as well in law as in equity. A contingent interest is always subject to be defeated, else it would not be contingent. The nature of the interest, as a species of property, is not affected by the contingency upon which it will vest in possession; there being no uncertainty as to the person. If the survivorship of the donee be the contingency, it will not be transmissible to his personal representatives, but it may still be assignable, the assignee, of course, taking subject to the chance that it may never vest in possession.

While there appears to be no authority in this state squarely on the question, it is settled in Massachusetts that contingent interests in both real and personal property are capable of alienation, subject, of course, to the same contingencies in the hands of the assignee as in those of the assignor, that they will pass by an assignment under the insolvency laws and also to an assignee in bankruptcy, and can be reached by a creditor's bill. See Winslow v. Goodwin, 7 Metc. 363; Gardner v. Hooper, 3 Gray, 398; Pierce v. Lee, 9 Gray, 42; Nash v. Nash, 12 Allen, 345; Dunn v. Sargent, 101 Mass. 336; Minot v. Tappan, 122 Mass. 535; Daniels v. Eldredge, 125 Mass. 356. Gardner v. Hooper and Daniels v. Eldredge, supra, cannot be distinguished in principle from this case.

If there had been a gift in express words to the appellant, coupled with a gift over in the event of his death prior to that of his mother, he would have a vested interest subject to be divested by such prior death, and I take it, Bergmann v. Lord, supra, would be a direct authority for the proposition that such interest could be reached in a judgment creditor's suit. But what possible reason can be suggested

for differentiating such a case from this, except that different words are used to describe an interest, which in neither case would ripen into an estate in possession and enjoyment unless he survives his mother? Of course, such an interest will not fetch as much as one which is certain to vest in possession, but that is not a reason for denying to creditors the right to have their debtor's property interests applied to the payment of his debts, unless, indeed, the law is to be tender with those who do not pay their debts. The question is, Has the appellant a property interest or a bare possibility unaccompanied by any interest? It seems to me, both upon principle and authority, that he now has a right in the nature of a property interest, which he could assign, which would pass to a trustee in bankruptcy, and which can therefore be reached in such an action as this. If he has no such interest, it would seem that he could procure a discharge in bankruptcy so as to relieve his share of the estate from the claims of his creditors upon the termination of the trust estate.

The order should be modified, so as to give the defendant leave to withdraw the demurrer, and, as thus modified, affirmed, with $10 costs and disbursements.

CLARKE and DOWLING, JJ., concur.

SCOTT, J. (dissenting). I wholly concur with Mr. Justice MILLER as to the practice, but am unable to agree with him as to the nature and extent of the interest of Henry B. Billings in the estate of his deceased father. This action is by a judgment creditor of said Henry B. Billings, and its purpose is to procure a sale of his interest in the estate of his father, Chester Billings, deceased. The question is whether or not Henry B. Billings has such a present interest as may be sold in a creditor's action, and this depends upon the construction to be put upon the father's will. By the third clause, the entire estate, real and personal, is given to the executors and trustees, with provisions which undoubtedly work an equitable conversion of the realty into personalty. A certain sum it to be set aside and kept invested for the benefit of a sister (now deceased), and the balance of the estate is to be held for the benefit of testator's widow during her lifetime. The provision for the son Henry B. Billings is contained in the following clause:

"And as to all the rest of the money collected and realized from both my said personal and real estate upon trust that my said trustees and executors hereinafter named or the survivors of them do and shall invest and loan the same and keep the same invested and loaned upon Bonds and Mortgages on unincumbered real estate in the State of New York or upon such other bonds, stocks and securities as they or the survivor of them may think proper with full power in the discretion of my said trustees and the survivor of them to change, vary and transpose the said loans and investments from time to time for any other loan or investment of a similar nature and as to all the interest and income arising from said loans and investments upon trust to pay the same from time to time to my wife Sarah, for and during her natural life. And I declare that the provisions made by me in this my last will for my said wife shall be taken and accepted by her in lieu of and in full satisfaction of her claims to dower or thirds out of any and all the real and personal estate of which I have been seized or now am or shall be seized or possessed. And if my son and daughter my only two children shall

both be living at the time of my wife's death or if one or both of them should then be dead leaving issue living at the time of my wife's death, then it is my will and I direct that my trustees and executors or the survivor of them do and shall at once upon the death of my wife divide the principal of my estate, excepting the ten thousand dollars invested· for my said sister if she still be living, into two equal portions or shares and shall set apart one share, one half part, for my son or his issue and one share, the other half part, for my daughter or her issue."

If the son shall not have attained the age of 25 years at the time of the wife's ·death, his share is to be held by the trustee until he does attain that age, and is then to be paid over. Other provisions follow as to the disposition to be made by the trustees in case the son dies before the widow, or before arriving at the age of 25 years, as follows:

"But if my son should be dead· at the time of my wife's death leaving issue him surviving at the time of .her death, or if my son should die at any time between the death of my wife and his attaining the age of twenty-five years leaving issue him surviving then my said trustees shall in either of these events at once pay over and distribute his said share of my said es· tate, in equal proportions share and share alike to and among such of his children as shall then be living, and the issue of such as shall then be dead, such issue taking his, her or their parent's share."

The will contains no words of gift to the testator's son and daughter, but only a direction to the trustees to pay over at a future time, the person to whom payment is then to be made to be determined at the time when the distribution is to be made. The general rule applicable to such a will is well settled. "Where there is no gift but by a direction to executors or trustees to pay or divide and pay at a future time, the vesting in the beneficiary will not take place until that time arrives." Warner v. Durant, 76 N. Y. 133–136. The same rule has been stated in many cases. Smith v. Edwards, 88 N. Y. 92; Shipman v. Rollins, 98 N. Y. 311; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; Matter of Crane, 164 N. Y. 71, 58 N. E. 47; Herzog v. Title Guarantee & Trust Co., 177 N. Y. 99, 69 N. E. 283, 67 L. R. A. 146. In Delafield v. Shipman, supra, the question was, under a somewhat similar provision, whether a daughter ·to whom a share was to be paid if she survived her mother, but who died before her mother, had any present interest in the estate which she could devise; in other words, whether she had a present, alienable interest. It was held that she had not, because futurity attached to the substance of the gift, which was not direct, but was to be found only in a direction to the trustees to divide and pay over after the death of the widow. Speaking of the testator's intention, the court said:

"He vested the whole estate in the trustees during the life of his widow, and during that time evidently intended that it should remain there, and not be subject to the disposal of his children, or liable to be seized by their creditors, and after the death of his widow he gave it, not to the children living at his death, but to the children and descendants of children deceased living at her death."

These very words might most appropriately be applied to the will now under consideration. So in Matter of Crane, 164 N. Y. 71, 58

N. E. 47, the Court of Appeals again stated the rule applicable to such bequests as follows:

"First. When the only words of gift are found in the direction to divide or pay at a future time the gift is future, and not immediate; contingent, and not vested.

"Second. When the gift is of money and the direction to convert the estate is absolute, the legacy given to a class of persons vests in those who answer the description and are capable of taking at the time of the distribution."

After discussing the provisions of the will, which did not differ essentially from the one under consideration, the court stated its conclusion as follows:

"That, aside from the direction to the executors or trustees to divide and distribute the estate, there are no words importing a gift, and hence it becomes our duty to give force and effect to the rule that, where the only gift is found in a direction to divide or pay at a future time, the gift is future, not immediate; contingent, and not vested."

It seems to me to be the inevitable deduction to be drawn from these well-settled rules that during the lifetime of the testator's widow (who is still living) the appellant has no right of property or present interest in the estate. The will made no gift to him, but merely provided that in a certain contingency a portion of the estate should be given. Futurity attaches as well to the gift, as to its enjoyment, and herein I conceive is to be found the fundamental distinction between such a gift as this and the present gift of a future contingent estate. In Bergmann v. Lord, 194 N. Y. 71, 86 N. E. 828, it was held that a creditor's action could reach the debtor's vested remainder in personal property, but in that case the will contained a present gift of the remainder of a fund after the death of the testator's widow for whose benefit meanwhile it was to be held in trust, and great stress was laid in the opinion upon the fact that the gift was to be vested upon the death of the testator. All the appellant now has is the possibility, perhaps the expectancy, that he may hereafter receive or be entitled to a share in the estate. Perhaps he might dispose of that possibility, if he could find any one to buy it, so effectually that upon the happening of the contingency he would be estopped to deny his grantees' right to receive it, but he would not sell property or a share in the estate, but merely the chance that he might hereafter become entitled to receive a share. Such a chance is not property, and its present value must necessarily be purely speculative. Section 1871, Code Civil Procedure, under which this action is brought, describes what may be reached as follows:

"Anything in action, or other property belonging to the judgment creditor, or any money, thing in action or other property due to him or held in trust for him."

The possible future interest in his father's estate which the plaintiff seeks to reach does not fall within the terms of the statute. "A judgment creditor's action, whether instituted under the provisions of the Revised Statutes (vol. 2, tit. 2, pt. 3, c. 1, art. 2) or the Code of Civil Procedure (tit. 4, art. 1, c. 15), can reach only property belonging to or things in action due to the judgment debtor or held in

trust for him. Neither statute goes further (Niver v. Crane, 98 N. Y. 40)." "The contingent right of another arising from the chance that he may be entitled to share in such estate as one of the next of kin of the owner thereof should he outlive him is a bare possibility unaccompanied by any interest during the life of such owner and cannot be reached by a creditor's bill." Smith v. Kearney, 2 Barb. Ch. 533–546. This, I take it, is all that appellant has respecting his father's estate—a bare possibility unaccompanied by any present interest, in a legal sense, because the will contained no gift to him, and he took nothing under it, and can take nothing unless he both survives the widow and attains the age of 25 years. Then only, if ever, will the contemplated gift vest in him an interest in the estate.

I am therefore of the opinion that the demurrer was erroneously overruled on the merits, and that the order appealed from should be reversed and the motion for judgment granted.

McLAUGHLIN, J. (dissenting). Action to have a judgment for upwards of $29,000 against the defendant Henry B. Billings, upon which an execution has been issued and returned unsatisfied, adjudged to be a lien upon his alleged interest in a trust fund created by the will of his father and for a sale thereof. He demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The plaintiff thereupon moved for judgment upon the pleadings. The motion was granted with $10 costs, "with leave, however, to said defendant upon payment of such costs to serve an answer"; and, if the costs were paid and the answer served, then the motion was denied.

The motion for judgment was made under section 547 of the Code of Civil Procedure. This section is a part of chapter 6, tit. 2, of the Code of Civil Procedure. Title 2 is headed "Provisions generally applicable to pleadings," and the first section in the title (518) provides that:

"This chapter prescribes the form of pleadings in an action and the rules by which the sufficiency thereof is determined, except where special provision is otherwise made by law."

A new section, known as 547, was added in 1908 (chapter 166, Laws 1908), and provides that:

"If either party is entitled to judgment upon the pleadings, the court may, upon motion, at any time after issue joined, give judgment accordingly."

The purpose sought to be accomplished by this section was to enable the parties to avoid the long delay incident to waiting until the action was reached upon the calendar for trial, and to permit them, after issue was joined, to move for judgment at Special Term upon the same grounds and governed by the same rules as though the motion were made at the trial. Clark v. Levy, 130 App. Div. 389, 114 N. Y. Supp. 890; Mitchell v. Dunmore Realty Co., 135 App. Div. 583, 120 N. Y. Supp. 771. A motion for judgment under this section cannot, however, be granted if a material issue of fact or law be raised by the pleadings. If material issues, either of fact or law, are raised, they must be disposed of before judgment can be rendered,

as provided in chapter 10, tit. 1, art. 1, of the Code of Civil Procedure; that is, by a trial. The first article of the chapter is headed "Issues and the mode of trial thereof," and the first section in the article (963) provides that:

"The issues treated of in this chapter are those only which are presented by the pleadings. An issue arises where a fact or a conclusion of law is maintained by one party and controverted by the other. Issues are of two kinds. 1. Of law; and 2. Of fact."

Section 964 provides, "An issue of law arises only upon a demurrer." Then follow provisions as to the manner in which issues of fact and issues of law are to be tried, and an issue either of fact or of law must be tried in the manner pointed out in chapter 10, tit. 1, art. 1, "unless it is disposed of as prescribed in chapter sixth of this act." A demurrer raises an issue of law which must be tried and disposed of in the manner pointed out, because provision is not made for its trial or disposition "in chapter sixth" and is made in chapter 10. If the demurrer be frivolous, it does not raise any issue, and a summary application for judgment may be made under section 537 or 547. Delmar v. Kinderhook Knitting Co., 134 App. Div. 558, 119 N. Y. Supp. 705. Otherwise, the issue raised by it must be tried (section 965, Code Civ. Proc.), and after such trial a decision in writing must be filed in the clerk's office (Id. § 1010). The decision, when filed, must direct the final or interlocutory judgment to be entered thereon (Id. § 1021). The trial by the court of an issue raised by the pleadings in an action, whether of fact or of law, must be followed by a decision in writing, because that constitutes the only basis for a judgment. Wise v. Cohen, 113 App. Div. 859, 99 N. Y. Supp. 663; Lederer v. Lederer, 108 App. Div. 228, 95 N. Y. Supp. 623; Sommer v. Sommer, 87 App. Div. 434, 84 N. Y. Supp. 444; Gein v. Little, 86 App. Div. 503, 83 N. Y. Supp. 685; Lentschner v. Lentschner, 80 App. Div. 43, 80 N. Y. Supp. 146.

The demurrer in the present case clearly is not frivolous. Whether the appellant has a present interest in the trust fund created by the will of his father which can be sold to satisfy a judgment against him presents a question of law, of which much might be said in opposition. Sections 1879, 2463, Code Civ. Proc. Under the will, the only words of present gift are to the trustees therein named, in whom the legal estate is vested subject to a trust for the benefit of the testator's widow during her life, and it is only upon the death of the widow that the trustees are directed to divide and dispose of the principal sum. The direction is that at such time—that is, the death of the widow— the trustees distribute such fund among such of testator's descendants as may be living, not at the time of the testator's death, but at the time of the death of the widow, who is still living. The demurrer raises this issue, and it must be determined by a trial, followed by a decision, upon which judgment can be entered. I use the word "decision," not because there is any magic in the name, but because the Legislature has enacted that the trial of an issue of law shall be followed by a "decision" (subdivision 5, § 3343, Code Civ. Proc.) in writing upon which judgment shall be entered. Id. §§ 1010, 1021.

I cannot believe that the Legislature intended, by enacting section 547, to provide that an issue of law raised by demurrer could be summarily disposed of by the entry of an order. Had it so intended, it would seem as though the other sections relating to a demurrer would have been repealed or amended in such a way as to make the practice under all of the sections harmonious. It certainly does not simplify the practice, at least so far as appeals are concerned, if the sufficiency of a demurrer can be tested under section 547, because this court has already held that separate appeals may be taken from the order as well as from the judgment. Mitchell v. Dunmore Realty Co., supra. The learned justice who heard the motion which resulted in the order appealed from, as appears from his opinion, felt bound by a decision made by another justice sitting in a co-ordinate branch of the court. There, after a trial conducted in a manner pointed out in the Code of Civil Procedure, the demurrers were overruled; but that does not justify, when the motion was here made, the granting of a judgment without a trial, even though a similar question were presented.

There seems to be some misapprehension as to the purpose of section 976 of the Code of Civil Procedure and the practice to be adopted under it. This section is the same as section 255 of the Code of Procedure, as amended by chapter 946 of the Laws of 1895, chapter 569 of the Laws of 1900, and chapter 493 of the Laws of 1909. Prior to the amendment of 1900, an issue raised by a demurrer had to be tried at a Trial or Special Term in the county where the venue was laid. In some of the counties of the state not more than two Trial and Special Terms were held each year, and in many of them not over four or five, but in the judicial districts in which such counties were located Special Terms were frequently held for the purpose of hearing contested motions. To obviate the delay which a demurrer necessarily brought about in the counties referred to, section 976 was amended in 1900 (and made applicable to the whole state, except the First and Second Judicial Districts) by adding the sentence, "an issue of law may be brought on and tried, at any term of court, as a contested motion." The section remained as thus amended until 1909, when the exception was stricken out and the section made applicable to the whole state. Chapter 493, Laws 1909. The amendment permitting the issue raised by demurrer to be brought on as a contested motion did not mean that it could be disposed of in the same manner as a contested motion—that is, by the simple entry of an order. The issue raised by the demurrer, after the amendment, had to be tried and disposed of in precisely the same manner that such issues had theretofore been disposed of. All that the amendment did was to enable a party to dispose of the issue raised by a demurrer by bringing the same to trial at any of the terms of court where a contested motion could be heard. If this is not the meaning of the amendment, then it is somewhat significant that its correct meaning was not ascertained by the profession for nearly 10 years, and then only after it was made applicable to the First Judicial District, where prior, as well as subsequent, to the amendment, an issue raised by a demurrer could be brought to trial within a very few days.

Here a decision in writing was not filed, but simply an order entered granting judgment, and providing that defendant might answer on payment of costs. The order, however, did not give the defendant permission to withdraw his demurrer. This could only be done by leave of the court, and whether such leave should be granted is within its discretion. Nat. Contracting Co. v. Hudson River W. P. Co., 110 App. Div. 133, 97 N. Y. Supp. 92; Fisher v. Gould, 81 N. Y. 228; Simson v. Satterlee, 64 N. Y. 657. The demurrer admits every material allegation of fact alleged in the complaint. If the appellant, therefore, should interpose an answer without withdrawing the demurrer, it is difficult to see what good it would do him. All that the plaintiff would have to do at the trial would be to introduce the demurrer in evidence. Nat. Contracting Co. v. Hudson River W. P. Co., supra; Asphalt Construction Co. v. Bouker, 127 App. Div. 730, 112 N. Y. Supp. 31; Peters v. Needham Piano & Organ Co., 124 App. Div. 749, 109 N. Y. Supp. 572. Considering, however, the merits of the demurrer, I concur in the views expressed by Mr. Justice SCOTT.

My conclusion, therefore, is that the order appealed from should be reversed, with $10 costs and disbursements, and the motion for judgment denied, with $10 costs.

