CLOWE v. SEAVEY et al.

(Supreme Court, Trial Term, Saratoga County. November 17, 1911.)

1. WILLS (§ 622*)—ESTATES—REMAINDER.
   A clause of testator's will gave one-fourth of his estate in trust for the use of testator's son and the son's wife during their lives or the life of the survivor, and provided that, if the son should die and his wife survive him and remarry, then the son's children should have the property. A subsequent clause provided that if any child of testator should die before him, leaving no lineal descendants, the share of such child should go to testator's living children and the lawful issue of testator's deceased children. Held, that the will should be construed to mean that, during the life of the son and his wife or the survivor of them, one-fourth of the estate should be held in trust for the benefit of the son and son's wife, and that after the death of his son and his wife, or her remarriage, the principal should be paid to the children of his son or descendants.
   [Ed. Note.—For other cases, see Wills, Dec. Dig. § 622.*]

2. REMAINDERS (§ 14*)—ASSIGNMENT OF REMAINDER.
   A remainder, whether vested or contingent, is assignable.
   [Ed. Note.—For other cases, see Remainders, Cent. Dig. § 10; Dec. Dig. § 14.*]

3. BANKRUPTCY (§ 279*)—ACTIONS BY TRUSTEE.
   A trustee in bankruptcy may sue to recover an interest in a remainder assigned by the bankrupt.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 279.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
   131 N.Y.S.—52

4. BANKRUPTCY (§ 303*)—ACTION BY TRUSTEE.
    In an action by a trustee in bankruptcy to set aside an assignment by
the bankrupt of a future interest in an estate, as in fraud of creditors,
evidence *held* to show that the assignment should be set aside except as
to a certain advancement made by the assignee to the bankrupt.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

5. BANKRUPTCY (§ 182*)—TRANSFERS BY BANKRUPT.
    Though a bankrupt intended to hinder and delay her creditors by mak-
ing a certain assignment, it could not be set aside by the trustee unless
there was legal fraud upon the part of the assignee.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 182.*]

6. BANKRUPTCY (§ 476*)—ACTION BY TRUSTEE—COSTS.
    In an action by a trustee in bankruptcy to set aside an assignment by
the bankrupt of his interest in a remainder, the trustee should be allowed
his costs and an additional allowance out of whatever funds might be
realized from the disposition of the interest of the bankrupt under the
will.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 476.*]

7. BANKRUPTCY (§ 474*)—COSTS.
    In an action by a trustee in bankruptcy to set aside an assignment by
the bankrupt of his interest in remainder, the taxable costs of an infant
defendant, who was impleaded in the action and defended by a guardian
ad litem, should be paid out of the funds of the estate.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 474.*]

Action by Charles W. Clowe, as trustee in bankruptcy of Elizabeth
S. C. Seavey, against the bankrupt and others, to set aside an assign-
ment of a future interest in an estate as in fraud of creditors. Judg-
ment for plaintiff.

Hiram C. Todd (Edgar T. Brackett and W. E. Bennett, of counsel),
for plaintiff.
Beardsley, Hemmens & Taylor (Henry J. Hemmens and George
Tiernan, of counsel), for defendants.

J. A. KELLOGG, J. The plaintiff has been appointed trustee in
bankruptcy of Elizabeth S. C. Seavey, one of the defendants, and by
this action seeks to have set aside a certain instrument executed No-
vember 19, 1908, whereby the said Elizabeth S. C. Seavey purported
to assign to the defendant Mary E. Seavey, her mother-in-law, her
interest under the will of her grandfather, William H. Clement, de-
ceased.

[1] Elizabeth S. C. Seavey and Henry S. Clement, Jr., are the only
living children of Henry S. Clement, who also is living. Their mother,
Julia Y. Clement, is dead. William H. Clement, late of Warren coun-
ty, Ohio, died in or about the year 1887, leaving a last will and tes-
tament which was admitted to probate at the place of his residence,
and afterwards recorded in the surrogate's office in Saratoga county
in the state of New York.
The eighth and eleventh clauses of said will, which are pertinent in
this controversy, are as follows:

"I will and bequeath to my son, John B. Clement, and my friend, John
Cox, of the city and state of New York, in trust and as trustees, for the sole
use and benefit of my son, Henry S. Clement, and his wife Julia Y. Clement,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for and during the period of their natural lives, or during the lifetime of the survivor of the said Henry S. or Julia Y. Clement, for the purpose of supporting and maintaining them and their children lawfully begotten and born to my said son by his said wife, Julia Y., or in the event of her death before his, to the support and maintenance also of such children lawfully begotten and born to my said son in wedlock, by another marriage or marriages, and for no other purpose, one undivided one-fourth part of the said remainder of my said estate. And I further order and desire my said son, John B. Clement, and the said John Cox, as trustees aforesaid, to collect said moneys herein devised by this bequest, and all the rents, profits and income of the same, during the lifetime of my said son, Henry S. Clement, or during the lifetime of my said son's wife, Julia Y. Clement, and to pay the net income or residue of all such money collected, after paying taxes, insurance, and all the other necessary expenses or charges due on, or connected with the said trust estate, during the continuance of the said trust, to my said son, Henry S. Clement, during his lifetime; and after his death, to his said wife, Julia Y., during her lifetime, should she survive him, if she remain the widow of my said son, for the uses and purposes aforesaid. In the event of the death of my said son and the remarriage of his said wife, should she survive him, I desire and direct my said trustees, John B. Clement, and John Cox, to pay to my said grandchildren, lawful children of my son, Henry S. Clement, or their descendants, all the estate hereby devised to my son, Henry S. Clement, and his children as aforesaid, herein expressed."

"Item 11th. That is to say, after paying all the special bequests and devises, as heretofore stated, the remainder of my estate, real, personal, and mixed, shall be divided into four equal parts, and disposed of in the manner and form herein provided and directed. And I further direct and desire that in the event of the death of any of my said children, Henry S., John B., Florence P., Clement, or Caroline W. Soteldo, before my decease, leaving no lawful lineal descendants, then, in that event, the portion of my estate, and each and every part, thereof herein devised or bequeathed to such child or children, dying without lawful issue, before me, shall pass to, and vest in equal parts in my said own children living at the time of my decease and the lawful issue of any of my deceased children, and the lawful children of their children, shall take and receive the portion of its deceased parent in the manner provided in this my last will and testament."

Under a narrow and literal construction there is no disposition by the will of the testator of the remainder after the termination of the trust except in the event of the death of Henry S. Clement, *and* the remarriage of his widow.

Such, however, was clearly not the intention of the testator. The provisions are very clumsily drawn; but I think their fair interpretation, in the light of the evident intent of the testator, is that during the life of his son, Henry S. Clement, and his wife, Julia Y. Clement, or the survivor of them, this one-fourth of the residue of his estate should be held in trust for the benefit of his son and his son's wife and their children, and that, after the death of his son and his son's wife or her remarriage, the principal of such one-fourth of the residue of the estate should be delivered and paid to the children of his son or their descendants. This was the manifest scheme of the testator clearly apparent from a reading of the sections quoted.

The well-established canon of construction is announced by Judge Brown, in Tilden v. Green, .130 N. Y. 29, 51, 52, 28 N. E. 880, 884 (14 L. R. A. 33, 27 Am. St. Rep. 487), as follows:

"At the threshold of every suit for the construction of a will lies the rule that the court must give such construction to its provisions as will effectuate the general intent of the testator as expressed in the whole instrument.

It may transpose words and phrases and read its provisions in an order different from that in which they appear in the instrument, *insert* or leave out *provisions if necessary*, but only in aid of the testator's intent and purpose. Never to devise a new scheme or to make a new will."

The testator's intent and purpose and his scheme as evinced by the context of the will compels the conclusion that the trust should exist during the joint lives of his son and his son's wife, unless shortened by the remarriage of the latter, and that upon the termination of the trust the property should be delivered to the remaindermen descendants of Henry S. Clement.

Much discussion has been had as to whether the interest of the children of Henry S. Clement, one of whom is the defendant Elizabeth S. C. Seavey, which they take under the provisions of this will, is a vested or a contingent remainder.

[2, 3] It is unnecessary to determine this somewhat involved question for the reason that, whether this remainder was vested or contingent, it was plainly assignable, and therefore becomes proper subject-matter for an action of this nature. Whatever doubt may have heretofore existed upon this subject, if any, is certainly laid at rest by the late decision in the case of National Park Bank v. Billings, 144 App. Div. 536, 129 N. Y. Supp. 846, affirmed by the Court of Appeals (96 N. E. 1122) October 24, 1911, upon the opinion of Justice Miller.

The contention of the learned counsel for the defendants, that the interest of the bankrupt is so shadowy and intangible as not to be assignable, and therefore not subject to an action of this nature, is entirely at variance with his presumed opinion at the time he drafted and supervised the execution of the assignment in question.

If the interest would not have passed to a trustee in bankruptcy, it could not have been assigned to a third person. In 1907 the defendants Elizabeth S. C. Seavey and Henry S. Clement, Jr., were appointed substituted trustees of the trust in question by the probate court of Warren county, Ohio.

The trust estate consists of an undivided interest in real property situated at Saratoga Springs, N. Y., and of securities physically present within the state.

The assignment of the interest which it is in this action sought to set aside recited:

"That the party of the first part, in consideration of the covenants hereinafter contained to be performed by the party of the second part, and of all the advances in money heretofore made by the party of the second part to the party of the first part," etc.

The covenant contained in the agreement referred to as a portion of the consideration was:

"And as a further consideration of the foregoing sale, transfer, assignment and conveyance the party of the second part doth hereby, for herself, her executors, administrators and assigns, agree with the party of the first part that she will, upon the execution and delivery of this agreement, make, execute, publish and declare a last will and testament, in which she will give, devise and bequeath, all the said estate hereby conveyed to her, as well as all of her other estate, both real and personal, of whatever name and

nature and wherever situated, of which she may die seized or possessed, in trust, for the sole use, benefit and support of her son, James Arthur Seavey, of the city, county and state of New York, and his wife, Elizabeth S. C. Seavey, of the city, county, and state of New York, for and during the period of their natural lives, and during the life of the survivor of the said James Arthur Seavey, and said Elizabeth S. C. Seavey, and the remainder to their son, Arthur Clement Seavey, of the city, county and state of New York."

In accordance with this covenant a will was subsequently executed and published by Mary E. Seavey.

[4] On or about September 30, 1907, the bankrupt had signed, as a joint maker with her brother, a note for $10,000, payable to Edgar T. Brackett, which note was renewed from time to time, and at one of these renewals acquired the additional security of the indorsement of James A. Seavey. The last renewal of this note is held by the Adirondack Trust Company, and has been put in judgment and is the only claim against the bankrupt's estate which has been proved in the bankruptcy proceedings.

The evidence quite clearly shows that, shortly before the making of the assignment in question, correspondence of a very vigorous nature was had with the bankrupt, which must very forcibly have called her attention to the fact that this note upon which she was liable was outstanding, and her attention had also been directed to the fact, or claim, at least, that she owned an assignable interest in her grandfather's estate. She must have had both of these conditions largely in mind, and, unless this assignment was founded upon adequate and fair consideration and did not violate well-known principles of law, it cannot be upheld as against creditors or as against the trustee in bankruptcy who has succeeded to the rights of such creditors and who is empowered under the law to enforce such rights. It is claimed in defense of the assignment however, that at various times from 1897 down to the time of the execution of the instrument that the elder Mrs. Seavey loaned the bankrupt various sums of money which prior to November, 1908, aggregated the sum of $4,600, and that in that month the daughter-in-law applied for a further loan, which the elder Mrs. Seavey declined to make unless she was secured, and that, as a result of this demand upon her part, another advancement of $1,000 was made, and the assignment was executed.

There is nothing whatever in the evidence of either of the ladies from which it could be found that the provisions contained in the assignment as to the making of the will were any portion of the consideration for the assignment. Such provision evidently was inserted by the attorney for the palpable purpose of fortifying the instrument and making it less subject to successful attack, by including in the terms and upon its face an additional consideration for its execution; but it was not at all within the contemplation of the parties when they made their agreement, according to their own statements.

[5] Although the evidence quite clearly discloses an intent upon the part of the bankrupt to hinder and delay her creditors by placing her interest in her grandfather's estate, which was her only property of value, beyond their reach, such assignment cannot be set aside unless

there be also legal fraud upon the part of the grantee. Although both Elizabeth S. C. Seavey and Mary E. Seavey testified that the various advances prior to November, 1908, were made as loans, the cross-examination of Mary E. Seavey disclosed the fallacy of this theory. The circumstances also indicated distinctly the contrary. Mary E. Seavey had one only son, James A. Seavey, the husband of the bankrupt.

From time to time extraordinary expenses due to sickness, surgical operations, and childbirth, had to be met in the family of this her son, and at these times at the request of her daughter-in-law she advanced sums of money. They evidently were not advanced with any expectation of repayment, and no portion of them ever were repaid, and against many of them the statute of limitations had run. They were very clearly, in my opinion, gifts rather than loans and were advanced to the daughter-in-law neither with the belief nor the agreement that she would repay, but because the elder Mrs. Seavey considered that the disbursements would be more economically made by her than by her son.

The incapacity of the bankrupt to repay the loan was frequently reiterated by both parties to the assignment, and her future interest in the estate of her grandfather, which was her only property interest, was considered by both to be of little or no value.

When in November, 1908, however, a further advance was demanded the idea of making an assignment as security was to some extent prominent in the minds of the parties if they are to be believed, and when the elder Mrs. Seavey demanded security for an advancement at that time of $1,000, and had no knowledge of the involved financial condition of her daughter-in-law, she is entitled to this extent to be protected by the assignment. The court was very much impressed by the honesty of her testimony, although the theory which she at the trial sought to assert, to the effect that the prior advances had been loans, was incorrect, and had come to her not by reason of actual recollection of the transactions at the time, but by suggestions of other parties in interest more lately made, which had become impressed upon her memory. She was evidently mistaken in her recollection and was not attempting knowingly to falsify.

As has been noted, the condition in the assignment as to the making of the will was not in the mind of either of the women prior to the making of the written assignment. The $1,000 was advanced, and it was agreed that the daughter-in-law should assign her interest in her grandfather's estate as security therefor. This was the agreement and all of it. The writing itself was drawn some days later and contained matters not within the agreement, and therefore as to those additional matters the paper had no force or effect in law.

The provision as to the will was embodied in the written paper probably without thorough comprehension on the part of either of the parties, certainly without such comprehension on the part of the assignee, for the evident purpose of serving as an additional "anchor to windward" to if possible preserve the assignment through the stress

and storm which it would evidently thereafter be called upon to weather.

It is most clear that the written assignment did not express the intention of the parties. It was merely intended as security, and it should serve as security for the $1,000 advanced shortly before the time it was executed and for which security it was demanded and promised. It should not serve for security for prior advances which evidently were in the nature of gifts.

In this view the assignment should be set aside except so far as it must be preserved to protect the advances of the defendant Mary E. Seavey of $1,000, with interest from its date, November 19, 1908.

In this decision the action of the court in Lazarus v. Rosenberg, 70 App. Div. 105, 75 N. Y. Supp. 11, approved in White v. Fromme, 120 App. Div. 782, 105 N. Y. Supp. 634, is followed, so far as the facts permit.

[6, 7] His costs of the action, including an additional allowance of $250, should be paid to the plaintiff out of whatever funds may be realized from the disposition of the interests of the bankrupt under the will of William H. Clement, deceased. The taxable costs of the defendant Arthur Clement Seavey, an infant, who was impleaded in the action, and was entitled to defend by guardian ad litem, and he has so defended, should also be paid out of said funds. After the payment of such costs, the amount of $1,000 with interest from November 19, 1908, should be next paid to the defendant Mary E. Seavey from said funds, and the balance thereof should be disposed of by plaintiff in the administration of his trust.