---

In re SLOSSON'S ESTATE. (No. 7050.)

(Supreme Court, Appellate Division, First Department. April 9, 1915.)

Appeal from Surrogate's Court, New York County.

Judicial settlement of the estate of Josephine Slosson, deceased. From an order of the Surrogate's Court (87 Misc. Rep. 517, 149 N. Y. Supp. 797), modifying and affirming an order fixing the transfer tax on the estate of the deceased, the parties aggrieved appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Hugo Kohlmann, of New York City (Carroll H. Brewster, of New York City, on the brief), for appellants.

Alexander Otis, of New York City (Schuyler C. Carlton, of New York City, on the brief), for respondent.

PER CURIAM. Order affirmed, on opinion of Fowler, S., with $10 costs and disbursements. Order filed.

LAUGHLIN, J. (dissenting). The principal point of law presented for decision by this appeal is whether the remaindermen of a trust fund, who, on the failure of the life beneficiary to exercise a power of appointment with respect to it, take under the will of the testator who created the trust, are deprived of taking under his will by the exercise of the power of appointment in such manner that *part* of the fund is appointed to pay the debts of the life beneficiary, and the remainder is left to them in precisely the same shares they would take under the will creating the trust and are obliged to take under the exercise of the power of appointment, thus subjecting their interests to the transfer tax to which they would be subject if taken under the will creating the trust.

The appellants, other than the executor, are the children of Josephine Slosson. Her father, Peter Naylor, executed a last will and testament on the 17th day of September, 1872, and died on the 27th day of November thereafter. His will was duly admitted to probate on the 16th day of December, 1872. Under the seventh paragraph of his will, and a codicil thereto, among other things, a trust was created in a fund of $100,000, and the income thereof was given to his daughter

Josephine for life. The will provided that upon her death his executor should pay over and dispose of the corpus of the trust as she by "her last will and testament or writing in the nature thereof shall devise, bequeath or direct, and in default of such last will and testament" the executors were directed "to pay over the same to those who by law would be entitled to receive the same" had she "died intestate seised or possessed thereof, in * * * her own right." Josephine Slosson, by her will, devised and bequeathed $5,000 of the trust fund, over which she was given a power of appointment, to her husband absolutely; but he predeceased her. She also devised and bequeathed $17,000 of it to her executors, in trust to pay the income to her husband during life, with the remainder to her issue surviving him "in equal shares, per stirpes and not per capita"; and she further bequeathed $500 of the trust fund to one Margaret Gilleese. She then directed that her funeral expenses and all her just debts should be paid out of the trust fund, and she devised and bequeathed the balance of it to her issue, her surviving, "in equal shares per stirpes"; and she directed that, should her husband or Margaret Gilleese not survive her, the moneys bequeathed to them, or for their benefit, should be applied toward the payment of her funeral expenses and debts, and that the balance should go to her issue in equal shares per stirpes. She further authorized and directed the trustee of the trust fund either to make the payments specified or to pay over the trust funds to her executors for the purposes specified in her will, as already stated. She then bequeathed and devised her own property, and gave some of it to or for the benefit of her children.

It is not questioned but that the exercise of the power of appointment by Josephine Slosson effectively disposed of $500 of the trust fund to Margaret Gilleese, and further disposed of sufficient thereof to pay her funeral expenses and just debts, which aggregated approximately $25,000. Her children, the appellants, claim the balance of the trust fund by virtue of the will of their grandfather. They timely notified the sole trustee of their grandfather's will, who was also the executor of their mother's estate, that they elected to take under the will of their grandfather, and not by virtue of the exercise of the power of appointment by their mother. It appears by the affidavit of the executor of Josephine Slosson, deceased, who, as already observed, at the time of her death was the sole trustee under the will of her father, made in this proceeding for the determination of the transfer tax upon her estate, that she left personal property of the value of about $800, but no real estate in this state, and that the value of the trust estate of which she was the life beneficiary was $92,961.38, and that the three children of Josephine Slosson had elected to take under the will of their grandfather, instead of under the exercise of the power of appointment by their mother. The transfer tax appraiser reported that the value of the estate of Josephine Slosson on the day of her death was $94,116.73, which included $93,261.38 as the value of the corpus of the trust of which she was the life beneficiary under her father's will. From this amount he deducted $2,417.18 for funeral expenses and expenses of administration and commissions, and reported this as "leaving a net estate of which decedent died possessed of" $91,699.55, which

he found to be the total value of the property "passing upon the death of decedent." It appeared before him by the affidavit of the executor that Josephine Slosson owed lawful debts aggregating $24,841.12; but no deduction was made therefor from the amount of the taxable estate. The appraiser assessed and reported the amount of the transfer tax on the bequests for the payment of debts and on the remainder of the estate which the appellants take. In these respects the learned surrogate sustained the report of the appraiser.

It is contended by the learned counsel for the state comptroller that, if the appellants who are the children of Josephine Slosson had the right of election to take under their grandfather's will, they have failed to exercise it and have waived their right to do so. That contention has no merit. Their right to accept bequests and devises of their mother's own property without jeopardizing their right to take the remainder of the trust fund, not otherwise disposed of by the exercise of the power of appointment, under the will of their grandfather, is sustained by Matter of Lansing, 182 N. Y. 238, 74 N. E. 882. The other theory on which waiver or estoppel is claimed is equally untenable. It is that the children interposed no objection to the trustee's turning over the trust fund to himself as executor and charging commissions in each capacity. There is no evidence in the record to sustain this contention, other than the affidavit of the trustee and executor, which tends to show that he claimed to have so turned over the fund and that he assumed so to charge for commissions. If the appellants were entitled to receive the remainder from the trustee, they would not lose such rights by omitting to insist on receiving it from him in that capacity, rather than as executor of their mother's will, and their acquiescence, if they did acquiesce, in his charging commissions in both capacities, when he knew that they had elected to take under the will of their grandfather, does not preclude them from disavowing the exercise of the power of appointment in so far as it purports to have been exercised for them in a manner to give them only what they took under their grandfather's will, without the aid of the will by which the power of appointment was exercised. It appears that one of the appellants paid some of her mother's debts and was reimbursed therefor from the trust fund, which the trustee claims to have been previously paid over to himself as executor. On the theory of the appellants, the remainder of the trust fund not appointed to others by their mother belonged to them, and, if so, they could use it to pay the debts of their mother, or permit the executor to deduct and retain any amount for commissions, or for any other or no purpose, if they liked.

The fact that the grandchildren are not named, and may not have been born when the will creating the trust was made, is urged as a further obstacle to their taking under the will of their grandfather. It appears to be claimed that they could have no interest, either vested or contingent, under their grandfather's will until the death of their mother, and then only in the event of her failure to exercise the power of appointment, and our decision in Whittemore v. Equitable Trust Co., 162 App. Div. 607, 147 N. Y. Supp. 1058, is cited as authority for that contention. That decision has no application here. We were, in that case, deciding whether the settlor of the trust for her own benefit had,

by directing the trustee to pay the corpus to her next of kin upon her death, thereby created an interest in those who, if living at the time of her death, will probably be her next of kin, and, if so, would then become entitled to take the remainder by virtue of a gift thereof in the deed of trust to her next of kin on her death, and we held that she did not intend to and did not give them a present interest, either vested or contingent, within the contemplation of our statute relating to the revocation of trusts, for they could not be next of kin of the life tenant until her death, and that, therefore, their consent to such revocation was not required. Here the grandfather, by his will, which became irrevocable on his death, intended to and did part 'with all title, interest, and control, and directly bequeathed to a class consisting of these who would have taken the fund under our statute of distribution, if it had belonged to the life tenant and she had died intestate, subject only to the exercise of the power of appointment by her. Matter of Hoffman, 161 App. Div. 836, 146 N. Y. Supp. 898; Matter of Haggerty, 128 App. Div. 479, 112 N. Y. Supp. 1017, affirmed 194 N. Y. 550, 87 N. E. 1120; Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811. See National Park Bank v. Billings, 144 App. Div. 536, 129 N. Y. Supp. 846, affirmed 203 N. Y. 556, 96 N. E. 1122.

It is not necessary to decide whether any change in the statute of distribution after the death of the grandfather could have affected such bequest, for no change was made; and, moreover, it is not material whether the interest which they took vested in the children upon his death or upon their birth, if after that time, or was contingent upon the statute remaining unchanged, or, with respect to the quantum of interest, on their mother leaving a husband, or the subsequent birth of brothers and sisters who might survive their mother, for no claim is made to any interest in the right of their father, who predeceased their mother, and upon their respective births, if they were not living when their grandfather died, as to which there is no evidence, they became presumptively entitled to an interest in the fund upon the death of their mother. Matter of Haggerty, supra.

It is unnecessary to consider whether, under section 11 of the Personal Property Law (Consol. Laws, c. 41), which, after first providing that the absolute ownership of personal property shall not be suspended for more than two lives in being at the date of the instrument containing the limitation or condition, or, if in a will, the death of the testator, prescribes that in other respects limitations of future or contingent interests in personal property "are subject to the rules prescribed in relation to future estates in real property," and the decisions applying to personalty by analogy rules applicable to real property in deciding whether an interest is vested or contingent (see Chaplin on Suspension of the Power of Alienation [2d Ed.] § 385; Steinway v. Steinway, 163 N. Y. 183, at 195, 57 N. E. 312; Matter of Haggerty, 128 App. Div. 479, 112 N. Y. Supp. 1017, affirmed 194 N. Y. 550, 87 N. E. 1120; Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811), the interests which the grandchildren took in the corpus of the trust fund under the will of their grandfather became vested upon his death, subject to be divested, or were only contingent interests, for in either event the transfer of property had taken place under the will creating the trust, and noth-

ing further was required to make it effectual, and therefore the succession to the property under the will of the grandfather was no longer subject to taxation (Matter of Haggerty, supra; Matter of Lansing, supra; Matter of Vanderbilt, 172 N. Y. 69, 64 N. E. 782; Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791; Matter of Chapman, 133 App. Div. 337, 117 N. Y. Supp. 679; Matter of Smith, 150 App. Div. 805, 135 N. Y. Supp. 240).

We come now to the interesting and somewhat novel question as to whether the appellants, other than the executor, are precluded by the exercise of the power of appointment by their mother from taking under the will of their grandfather, which was executed before the enactment of the Transfer Tax Law. Of course, if they take under their grandfather's will without the aid of the execution of the power of appointment, their interests are not subject to the transfer tax. Matter of Lansing, supra. The precise question has been passed upon, favorably to the appellants, by a unanimous decision of the Appellate Division in the Second Department in Matter of Ripley, 122 App. Div. 419, 106 N. Y. Supp. 844; but the Court of Appeals affirmed the decision on the ground that there the will creating the trust provided that the claimants thereunder should take "unless otherwise disposed of as directed by the will" of the life tenant, which limited the exercise of the power of appointment to disposing of it *otherwise*, and that, in so far as the life tenant attempted to dispose of it *in the same way*, her will was inoperative. 192 N. Y. 536, 84 N. E. 1120. I think that Mr. Justice Woodward's opinion at the Appellate Division in that case, in which all his associates concurred, is sound on principle and is sustained by the views expressed by the Court of Appeals in Matter of Lansing, 182 N. Y. 238, 74 N. E. 882, quoted by him.

It has frequently been held that, when a remainder of a trust fund is thus bequeathed subject to the exercising of a power of appointment or on the failure to exercise it, the remaindermen may refuse to take under the exercise of the power of appointment and insist upon taking under the instrument creating the trust, provided it gives them the same interest and in the same relative shares they would receive under the exercise of the power of appointment. Matter of Hoffman, 161 App. Div. 836, 146 N. Y. Supp. 898, affirmed 212 N. Y. 604, 106 N. E. 1034; Matter of Haggerty, supra. Those decisions go upon the theory that the authority to appoint was given to appoint the property differently or in different interests. It seems to me that the grandchildren here have the same right to say that, in so far as their mother has not appointed the fund otherwise than as provided in the will creating the trust, her will is ineffective. If their mother had merely appointed part of the fund to pay her debts and legacies, and had not assumed to appoint the remainder to her children, manifestly the children would take it under the will of their grandfather. If it be competent for them to repudiate the exercise of the power of appointment in their favor, where they take precisely the same amount and in the same shares under the instrument creating the trust, I see no reason why they may not repudiate it, where they would take the part of the fund appointed to them by their mother in precisely the same proportionate shares as they would take under the will of their grandfather,

if their mother had not otherwise appointed it and had not thus assumed to appoint it to them.

I express no opinion beyond the facts of this case, but 1 hold that, where the only part of the fund appointed to the remaindermen by the exercise of the power of appointment conferred by the instrument creating the trust and constituting them remaindermen is appointed to them unconditionally and in the same relative shares as by the instrument creating the trust, they may take under the latter instrument. What the grandfather meant was that the fund should be distributed among those who would have taken from his daughter under the statute of distributions and in the proportions prescribed thereby, unless she, in the exercise of the discretionary power conferred upon her with respect to prescribing differently by the exercise of the power of appointment, should determine otherwise.  She did not determine otherwise as to the remainder which she appointed to her children in the event of her husband's death before her will took effect.  In that event, which transpired, she meant that they should take the remainder, not otherwise appointed by her, as their grandfather had provided. The provisions of her will with respect thereto after her husband's death were wholly unnecessary and accomplish nothing.  Their title was complete under their grandfather's will, unless divested by the exercise of the power of appointment, and it was quite unnecessary for the mother thus to attempt to confirm it.  It is not reasonable to ascribe to Josephine Slosson, by the insertion of these superfluous provisions in the will, an intention thereby to subject the interests of her children to the transfer tax, to which they were not otherwise subject, and no statute or rule of law with which I am familiar requires that the grandchildren be compelled to take through the exercise of the power of appointment by their mother, which would subject their interests to the transfer tax.

I am of opinion, therefore, that the interests of the appellants in the trust fund were not subject to the transfer tax, and I dissent from the affirmance of the order, in so far as it imposes a tax thereon.